Curia, per

Q’Neall, J.
The first ground of appeal on the part of the defendant, Cullum, makes the question whether McTier creek is within the Act of 1825. The Act declares that “no person shall erect any mill-dam or other obstruction across’ any stream used for the purpose of navigation by boats, flats, or rafts of lumber or timber, without,” <fec. What is meant by this term, “used,” in the connection in which it now stands'? It plainly refers the use of it which should give it a public character to the time at which the obstruction was made. If, at that time, the stream was used for the purpose of navigation, in any of the modes pointed out by the Act, the defendant, by the words of the Act, was prohibited from obstructing it. This will be more plain, perhaps, by stating facts which *585 led to the passage of the Act. At that time the enterprize of the people of the Edistoes had been aroused, and they were beginning to build mills on small tributaries of these two great rivers, and open them out by pássing down with rafts, and removing the obstructions in the way. The Act was intended to encourage this spirit, by preventing the enterprize from being defeated by some churlish or revengeful man, who, as soon as the creek was opened, might, on his own land, throw a dam across it, and thus deprive the mill owner above of the value of his mill, and the fruits of his active industry. Were it not for the Act of 1825, this would be the case with almost every one of the rafting creeks of the Edistoes ; for, generally, they could then in no point of view be regarded as common law navigable streams. Since the Act of 1825, they have become highways. The term “used” is a participle, and may have a past, present or a future meaning, according to the sense of the context. In giving it the construction which I have done, we do not, therefore, violate any grammatical use of it.
The second question is, whether putting in a slope in the dam wide enough and deep enough for the passage of rafts, but refusing to permit the gates upon it to be lifted, or to allow the prosecutor to pass his rafts through it, is a compliance with the Act.
The Act, after prohibiting the erection of a dam, as I have already stated, goes on to say, “without sufficient locks or slopes or canals in or around such mill-dams or other obstructions, to admit the free navigation of such streams; and if any person shall violate the true intent and meaning of this Act, such person shall be guilty of a nuisance, and such obstructions may be abated as other public nuisances are by the laws of this State.” The Solicitor, as he was bound to do, has negatived the exceptions in the enacting clause, after charging the erection of the dam, by averring that it was so erected without sufficient locks, slopes or canals, to admit the free navigation. The intention of the Act is plain, that when a dam was made across a stream, like McTier,- used for rafting, a sufficient way of passing rafts should be provided, which should at all times be open for their passage. Where the intent is *586 plain, it is to have effect, unless some rule of law should forbid. I admit the rule of construing a penal statute is strictly ; but much of the ancient strictness is relaxed, as may be seen by refering to the cases arising under our Acts prohibiting trading with slaves without a permit. The rule of reason is the one now adopted. The words in a statute are to be construed to support the intent, if that be plain, and the words will admit of such a meaning. What is meant by the words, without a sufficient slope to admit the free navigation 7 Do not they mean to say to the defendant, you may put your dam across McTier, if you will put in a slope wide enough and deep enough for the passage of rafts, and which shall at all times be open when needed for that purpose 'l I think, take all the words together, every one will say the question suggests the obvious meaning. This being so, are not the allegations in the indictment sufficient 1 Remember, the nuisance is the dam. The slope is an exception in favor of the defendant, found in the enacting clause. The Solicitor negatives it by saying that the slope was not sufficient to admit the free navigation. No doubt that sufficiently negatives the exception. If it had been that there was no slope in the dam, it would have been quite sufficient to have said “without a lock, slope or canal.” ’The words, sufficient to admit the free navigation, pointed the defendant sufficiently to the fact, that the State intended to en-quire whether his slope did admit the free navigation. This was enough, for it apprized the defendant of the matter to which his answer was expected. Did the proof sustain the allegations 1 It is clear it did ; for about the dam blocking up the entire course of the creek, there is no doubt. That was a nuisance, unless the defendant, in good faith, had provided a lock, slope or canal, sufficient to admit the free navigation. The State went on to shew he had not. The proof was, the prosecutor descended the creek to the dam, the gates were down. The defendant came out, with a force to assist him, and said this slope “is my private property.” You cannot pass it. He had previously informed the prosecutor, by letter, that unless he paid toll, $1 per raft, he could not pass the slope. When it is remembered that this slope is the defendant’s toaste *587 way, necessary for the preservation of his dam in high water, by letting it off, there can surely be no difficulty in saying the defendant did not make a sufficient slope to admit the free navigation ; for the defendant said, it is my private property, and claimed to collect tolls. This shews that it was not of that public character contemplated by the Act. It was not common to all who chose to pass by it. The free navigation of McTier was obstructed by the defendant’s, dam, and therefore his slope was not sufficient. This is giving effect to the meaning, and not sticking upon the precise letter. The first and third grounds of the plaintiff’s motion, in Toney vs. Cullum, are disposed of by the remarks made in the State vs. Cullum. As to the third ground, we think the case not a suitable one to consider it. Neither the attention of the court nor the counsel was directed to the question of special damages. No proof was heard. It seemed to be conceded, if McTier was a public highway, that the plaintiff could not recover. The nonsuit was submitted to, on the proof in the case of the State vs. Cullum, in which the prosecutor, Toney, the plaintiff, was the main witness. His proof, as to the question of public right, was conceded to be true; and my understanding was, if Cullum got a new trial, that then the nonsuit should be set aside in Toney’s case. Further than this we will not now go.
The motions in both cases are dismissed.
Richardson, Evans, Butler and Wardlaw, JJ. concurred.